IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Grace Woodson,                             Case No. 3:07 CV 2973

              Plaintiff,             MEMORANDUM OPINION
                                        AND ORDER

   -vs-
                                       JUDGE JACK ZOUHARY

Anne Grady Corporation,

              Defendant.

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 42), Plaintiff's Response (Doc. No. 48) and Defendant's Reply (Doc. No. 51). For the reasons set forth below, Defendant's Motion is granted.

## BACKGROUND

Defendant Anne Grady Corporation is a non-profit charitable organization licensed by the State of Ohio to provide services for individuals with mental retardation and developmental disabilities (Marx Aff. ¶ 2). Plaintiff Grace Woodson, an African-American, was initially hired by Defendant in 1994 as a rehabilitation assistant (Woodson Dep. I pp. 17-18, 21). Plaintiff worked for Defendant in a number of non-management positions prior to January 2004, when she submitted a bid for a management position as a staff coordinator (Woodson Dep. Ex. F). Plaintiff was awarded the staff coordinator position in February 2004 (Woodson Dep. Ex. G). Her evaluations in July and December 2004 received scores in the "satisfactory" range (Woodson Dep. Exs. J, K).

In January 2005, Defendant changed the staff coordinator job description by increasing the clerical duties staff coordinators were required to perform (Woodson Dep. I p. 46 and Ex. L). Existing staff coordinators could opt to accept the new job description on a probationary basis or reject the new job description and seek reassignment (Woodson Dep. I pp. 46-47). Plaintiff accepted the new job description and subsequently received a probationary composite evaluation score of 1.9 on April 25, 2005 (Woodson Dep. I p. 50). According to Defendant's evaluation policy, scores below 2.0 are not acceptable and may result in an extension of the employee's probationary period (Marx Aff. ¶ 8). Plaintiff's probationary period was extended an additional sixty days, and Plaintiff acknowledged her subsequent composite evaluation score would need to be 2.0 or higher "to determine whether [her] employment continues" (Woodson Dep. Ex. R). Plaintiff was also given a set of goals she would need to accomplish during the extended probationary period, including communicating with "tact and diplomacy" and approaching her supervisor monthly with presentation ideas for staff meetings (Woodson Dep. Ex. M).

During this extended probationary period, Plaintiff had additional performance problems. She had an outburst in front of her supervisor involving "abusive or vulgar language" on June 3, 2005 (Pollard Dep. Ex. 16) and received a poor home check evaluation on June 4, 2005 (Brown Dep. Ex. 1). She also did not meet her goal of approaching her supervisor with staff meeting agenda items (Woodson Dep. II p. 39). On June 7, 2005, Plaintiff requested a leave of absence pursuant to the Family and Medical Leave Act (FMLA) from June 6 through August 1, 2005 for stress-related reasons (Woodson Dep. II pp. 54-55). Plaintiff presented an authorization form for the leave signed by her physician (Woodson Dep. Ex. U). Defendant approved Plaintiff's leave request (Woodson Dep. Ex.

2

W). Because Plaintiff's physician was on vacation the week she was to return to work, her leave was extended to August 10, 2005 (Woodson Dep. II pp. 68-69).

While Plaintiff was on leave, Defendant completed Plaintiff's extended performance evaluation (Pollard Dep. p. 68).[1] On August 10, 2005, the day Plaintiff returned to work, Defendant presented to Plaintiff her extended evaluation as well as a Notice of Infraction for the June 3, 2005 incident (Marx Dep. pp. 20-23). Plaintiff received a score of 1.72 on her extended evaluation (Woodson Dep. Ex. EE). Based on the two sub-satisfactory evaluations, Plaintiff's supervisors were prepared to offer her a demotion to a non-managerial position (Marx Dep. pp. 31-32). However, Plaintiff's negative reaction to her evaluation score prompted Defendant to reevaluate whether to offer her a demotion as planned (Marx Dep. pp. 30, 32-33). Before Defendant could decide how to proceed, Plaintiff left the meeting and did not return to her employment (Marx Dep. p. 35).[2]

After Plaintiff's departure, Defendant posted an internal notice seeking bids to fill the open staff coordinator position (Marx Aff. ¶ 10). Four Caucasian employees submitted bids for the position; no African-American employees submitted bids (Marx Aff. ¶ 10). Defendant awarded the staff coordinator position to one of the Caucasian employees (Marx Dep. pp. 69-71).

---

[1] Defendant's policy permits it to complete extended performance evaluations at any time before the end of the probationary period (Marx Aff. ¶ 8).

[2] The parties dispute whether Plaintiff quit her employment or was terminated (Amended Complaint ¶ 18; Marx Dep. pp. 32-33). For the purposes of summary judgment, the Court will presume Plaintiff was terminated.

3

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## FMLA RETALIATION

FMLA permits an eligible employee to take up to twelve weeks of leave during a twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Claims brought for employer violations of this statute generally have a two-year statute of limitations "after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). However, if a claim alleges a "willful violation" of FMLA rights, the statute of limitations extends to three years. 29 U.S.C. § 2617 (c)(2).[3] Plaintiff filed her Complaint on October 1, 2007, more than two years after her termination on August 10, 2005. Thus, Plaintiff's claim is time-barred unless she shows Defendant acted willfully in its alleged violation of her FMLA rights.

---

[3] The issue of whether an employer acted willfully or recklessly, in determining the applicable limitations period, may be resolved on summary judgment. *Schneider v. City of Springfield*, 102 F. Supp. 2d 962, 967 n.5 (S.D. Ohio 1999) (*citing Dole v. Elliott Travel & Tours*, 942 F.2d 962, 967 n.5 (6th Cir. 1991) ("From our review of the record in this case, we hold that there is no genuine issue of material fact as to whether defendants' violation of the FLSA was willful.")).

The Sixth Circuit has defined willfulness under FMLA as "[a]n employer . . . act[ing] with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). This standard requires "more than a showing of negligence on the employer's part." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiff has failed to demonstrate that Defendant willfully violated FMLA's requirements.

28 U.S.C. § 2614(a)(3)(B) explicitly states that employees availing themselves of FMLA leave are only entitled to the rights, benefits, or position to which they would have been entitled had they not taken the leave. Plaintiff was in the middle of probation for poor performance on her April 2005 evaluation when she took FMLA leave on June 6, 2005 (Woodson Dep. II p. 58 and Ex. R). Moreover, Defendant's policy is that extended evaluations may be presented at any time during an employee's probationary period (Marx Aff. ¶ 8). Even though Plaintiff ostensibly had time remaining on her sixty-day probationary period when she returned to work, it was acceptable for Defendant to present her extended evaluation on the day of her return. Given her poor performance and infractions incurred before her departure, Plaintiff was no longer entitled to the rights, benefits and position she held prior to taking FMLA leave. Defendant's termination of Plaintiff was based on legitimate employment policy and on Plaintiff's behavior, and was not the result of a reckless disregard of Plaintiff's FMLA rights. Plaintiff has not demonstrated Defendant willfully violated FMLA in its adverse employment action, and her claim is barred by the tolling of the two-year statute of limitations for non-willful FMLA retaliation claims.

**RACE DISCRIMINATION**

Plaintiff may establish a prima facie case of race discrimination by presenting either direct or circumstantial evidence of the discrimination. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). As Plaintiff has not presented any direct evidence of racial discrimination, she must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the particular position; and (4) a person outside the protected class replaced Plaintiff. *Manzer*, 29 F.3d at 1081.

For the purposes of summary judgment, Defendant concedes that Plaintiff is a member of a protected class, suffered an adverse employment action, and was qualified for the staff coordinator position. However, Defendant argues Plaintiff was not "replaced" within the framework of *McDonnell Douglas Corp. v. Green*, 411 US. 792 (1973), because Defendant generally fills open positions through employee bids, and no African-American employee bid on Plaintiff's position. Defendant cites in support the cases of *Miller v. City of Canton*, No. 5:06CV769, 2008 WL 114362 (N.D. Ohio Jan. 9, 2008), and *Olivares v. Canteen Vending Servs.*, No. CIVS040262 DFL-PAN, 2005 WL 1489868 (E.D. Cal. June 21, 2005). Both found no prima facie case of employment discrimination where employees were replaced through bids governed by collective bargaining agreements.

Defendant is a private corporation whose company policy is to initially hire from within the corporation if bids are received from existing employees (Brown Dep. p. 41). However, Defendant acknowledges the policy is not a hard and fast requirement; Defendant has previously posted positions simultaneously within and outside of the corporation (Brown Dep. p. 41). Defendant's policy differs from those used by employers bound by collective bargaining agreements, who are required to hire

6

from among those who bid for a position. *See, e.g.*, *Olivares*, 2005 WL 1489868, at \*3 (defendant "presented undisputed evidence showing it was required to, and did, put [plaintiff's] position up for bid with the Teamsters Union, and that it was obligated to accept the highest bidder"). Defendant argues its cited cases "stand for the proposition that a discriminatory motive cannot be inferred where an employer follows its formal bidding procedure in good faith" (Doc. No. 51, Reply p. 6 n.2). Establishing a prima facie case of discrimination does not require any showing of discriminatory motives; that requirement comes at the third stage of the burden-shifting framework, where Plaintiff must show Defendant's legitimate, non-discriminatory motive is pretext for an impermissible employment action. Here, Defendant replaced Plaintiff's position with a Caucasian employee (Marx Dep. 45). Thus, Plaintiff has established a prima facie case of race discrimination.

The burden then shifts to Defendant to "'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Manzer*, 29 F.3d at 1082 (*quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). Defendant indicates Plaintiff's failure to receive a "satisfactory" score of 2.0 or higher on her extended evaluation is a valid basis for termination. The burden subsequently shifts back to Plaintiff to show no reasonable jury could conclude the reason offered for Plaintiff's dismissal was merely a pretext hiding a racially discriminatory motive. *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547-48 (6th Cir. 2004). Plaintiff can show pretext by demonstrating (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment decision; or (3) the proffered reasons were insufficient to motivate the adverse employment decision. *Manzer*, 29 F.3d at 1084.

Plaintiff has not presented sufficient evidence to create a genuine issue of material fact on any of the three forms of pretext. Plaintiff has not demonstrated that the proffered reasons have no basis in fact, the first type of pretext, as she admitted to never having set an agenda for a staff meeting, one of five goals established at her April 25, 2005 probationary evaluation (Woodson Dep. II p. 39). Additionally, under the third pretext type, Plaintiff has not established the proffered reasons were insufficient to motivate an adverse employment action. Plaintiff signed a form at her April evaluation acknowledging she would need to have an extended evaluation score of 2.0 or higher in order to determine whether her employment with Defendant would continue (Woodson Dep. II Ex. R). Plaintiff's score of 1.72 on August 10, 2005 is below the 2.0 required threshold and is sufficient to motivate Defendant's adverse employment action.

Finally, Plaintiff has not shown that Defendant's proffered reasons did not actually motivate its adverse employment action toward Plaintiff. Under *Manzer*, 29 F.3d at 1084, Plaintiff must show "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext." Plaintiff argues that her low evaluation scores demonstrate that Defendant's actions were impermissibly racially motivated. However, Plaintiff's job description changed in January 2005: she was given additional duties and a new ninety-day probationary period in which to be evaluated with these new duties (Pollard Dep. pp. 32-33), differentiating the scores she received on her April 2005 evaluation from the higher scores previously received.

Moreover, employers "may make a subjective judgment to discharge an employee for any reason that is not discriminatory. This is especially true when, as in the present case, a management level job is involved." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) (internal citations omitted). Plaintiff had several unsatisfactory incidents, including a poor home

8

check (Brown Dep. Ex. 1) and an outburst in front of her supervisor on June 3, 2005 (Pollard Dep. Ex. 16). Defendant has also treated other Caucasian supervisors in the same manner in which it treated Plaintiff: namely, termination prior to the conclusion of a probationary period because of declining job performance (Marx Supp. Aff. ¶ 5). Plaintiff has failed to show that racial discrimination, rather than her poor performance, motivated the low scores on her 2005 evaluations and her subsequent termination.

Plaintiff also argues her supervisor Jennifer Pollard's statement that Pollard "had black people in her family" (Woodson Dep. II p. 23) demonstrates racial motivation for her termination. This single comment about the racial makeup of the supervisor's **own** family shows no racial bias. Further, it was made outside the context of the employment decision-making process, and is insufficient to show "more likely than not" that Defendant's reasons for termination are pretext for racial discrimination. Accordingly, the Court finds the race discrimination claim fails as well.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 30, 2008